Alois J. RATERMANN and Edward Ratermann, in their representative capacities as Executors under the Will of Al. Ratermann, deceased, Plaintiffs-Respondents,

v.

RATERMANN REALTY & INVESTMENT COMPANY, a corporation, and George Ratermann, Defendants,

Robert E. Ratermann, Lambert N. Ratermann, and Mary Ratermann, Intervenors,

Robert E. Ratermann and Lambert N. Ratermann, Intervenors-Appellants.

No. 30541.

St. Louis Court of Appeals.

Missouri.

Dec. 20, 1960.

Robert E. Ratermann, Gregory & Ratermann, Clayton, for intervenors-appellants.

David LaDriere, Clayton, for defendants.

Forrest M. Hemker, Greensfelder, Hemker & Wiese, St. Louis, for plaintiffs-respondents.

Elmer J. Meyer, A. E. Nick, Carleno & Nick, Ferguson, for intervenor Mary Ratermann.

BRADY, Commissioner.

The respondents as co-executors of the Estate of Al G. Ratermann brought this action in equity against The Ratermann Realty & Investment Company, a Missouri corporation, hereinafter called the company, and George Ratermann, president of the company, hereinafter called the president. The petition alleged that the respondents' decedent, Al G. Ratermann, at his death owned 98 shares of the $100 par value capital stock of the company, as evidenced by certificates No. 5 and No. 6, each for 49 shares; that these certificates were issued in the name of Henry Ratermann, Sr., and "duly endorsed by him prior to the time the decedent became the owner thereof"; that while he was still living, respondents' decedent had tendered to the defendants these certificates and demanded that stock certificates be issued to the decedent, which demands were refused by the defendants. The petition then alleged that since decedent's death, the respondents acting in their capacity as co-executors under the will of decedent have made repeated demands upon the company and its president that a stock certificate evidencing the ownership of these 98 shares of stock be issued to the respondents in their representative capacity, but that the defendants have failed and refused to do so or to take any action so as to make the respondents the record owners of these 98 shares; that there were other owners in fact but not of record of shares of the company who have also made demands on the company and its president for the issuance of shares of stock to them, and the president has refused to issue any shares to those persons also; and that these other shareholders and the respondents

combined own more than a majority of the 500 shares of capital stock of the company. It was then alleged that the company owns valuable real property, that the defendant president of the company is the only living officer of the company, which has no duly elected board of directors, and that the president of the company refuses to transfer the shares of stock in order to prevent respondents and the other shareholders from becoming shareholders of record and thereby prevents a proper and legal shareholders' meeting which would be empowered to proceed with the election of officers. The usual allegation of equity jurisdiction follows in that the action of the company's president is alleged to be willful, arbitrary, illegal and to constitute misconduct such as to disqualify him as an officer of the company and that his actions are depriving the respondents of their legal rights as shareholders, to their irreparable injury and damage for which they have no adequate remedy at law. It is further alleged that by making the demands and tenders as stated in the petition, the respondents have taken all of the action which they can take under the charter and by-laws of the corporation and have thereby exhausted their remedies as provided by the company's charter and by-laws. The respondents prayed the court that: (A) The company be ordered and directed to accept the tender of the respondents of the certificates of stock No. 5 and No. 6 issued to Henry Ratermann, Sr., and to issue to the respondents in their executive capacity new certificates evidencing the ownership of these 98 shares of stock and to record the respondents' ownership thereof on the books of the company; (B) That the defendant president of the company be ordered and directed to accomplish such transfer and that he be authorized and directed to sign the stock certificates not only as president but also as acting secretary; (C) That in the alternative, the defendant George Ratermann be removed as president of the company and that the court decree the respondents in their representative capacity to be the owners of the 98 shares of stock, and the court direct and designate an appropriate person or persons to issue new stock evidencing the respondents' ownership and to record the same on the books of the company; (D) That in the alternative, the court appoint an appropriate officer of the court to convene and hold a meeting of the shareholders of the company for the purpose of electing directors of the company, and that as an incident to the meeting to be thus held under the supervision of the court and prior to the convening of such a meeting, the court by its decree direct the issuance of certificates of stock of the company to the respondents and other persons who are shareholders in fact but not of record.

On February 16, 1959, one Mary Ratermann, in her representative capacity as administratrix of the Estate of Joseph P. Ratermann, deceased, filed a motion to intervene accompanied by her petition, claiming ownership of certificate No. 6 for 49 shares adverse to the ownership of the estate and alleging deliverance by Joseph P. Ratermann of said certificate in trust to Al G. Ratermann, the decedent. This motion to intervene was argued and submitted, and on October 19, 1959, the court sustained said motion of Mary Ratermann to intervene on the grounds that a controversy existed between plaintiffs and said Mary Ratermann as to the rightful ownership of said 49 shares of stock. In that order the court set aside a previous order dated September 10, 1959, denying Mary Ratermann leave to intervene.

The appellants then filed their motion to intervene and accompanied said motion with their intervening petition. From the intervening petition which appellants seek to file, it appears that respondents are co-executors under the will of Al G. Ratermann and the same under the will of Theresa P. Ratermann, the widow of Al G. Ratermann; that the appellants are heirs at law of Al G. Ratermann and Theresa P. Ratermann; that the other children of these decedents were the respondents, one other brother, and two sisters; that the original suit in equity is one of a group of

cases in legal proceedings pending in the Circuit Court of the City of St. Louis, Circuit Court of St. Louis County, and the Probate Court of St. Louis County. It would unduly burden this appeal to set out all of these actions separately, but they fall into four general categories: (1) will contests filed by the appellants regarding the wills of Al G. Ratermann and Theresa P. Ratermann; (2) appeals by the appellants here from allowance of claims to the respondents by the probate court; (3) actions to compel the transfer of shares of stock; and (4) actions by the appellants for removal of respondents as executors of the estates of Al G. Ratermann and Theresa P. Ratermann. Of these four general classes of actions, the third class is necessary to this opinion, and we will therefore set those actions out in detail as well as the allegations of the intervening petition concerning each of them. Cause No. 7682–E involves 23.3770 shares of stock and was brought by the respondents in their representative capacity under the will of Theresa P. Ratermann against the trustees under the indenture of trust of Henry Ratermann, Sr., seeking to have such shares transferred to them in their executory capacity. The allegation of the appellants with respect to the shares involved in this action is that these shares in fact belonged to Theresa P. Ratermann at the date of her death as a result of a joint purchase with her husband from certain other members of the family. Cause No. 7683–E involves 44.5718 shares of stock and was brought by the respondents in their representative capacity under the will of Al G. Ratermann against the same trustees under the same trust indenture as above, seeking the transfer of such shares to them in their executory capacity. The allegations of the appellants with respect to the shares of stock involved in this cause is that these shares of stock in fact were owned by Al G. Ratermann at the date of his death. Cause No. 7680–E involves 22.-2857 shares of stock and was brought by the respondents as tenants in common against the trustees under the same trust agreement seeking to have such shares transferred to them as tenants in common. As to such shares, the allegation is that these shares in fact belonged to Theresa P. Ratermann at the date of her death under an agreement and contract between their father and mother on one hand, and one Katherine Ratermann Huger on the other hand, and that this contract has been interfered with by respondents who have been assisted in such interference by the said Katherine Ratermann Huger and her husband, Bernard J. Huger. Cause No. 7681–E involves 10.5972 shares of the company which the respondent Edward Ratermann seeks to have transferred to him as an individual, in an action against the same trustees of the trust created by Henry Ratermann, Sr. The allegation is that these shares are in fact shares of stock which belonged to Theresa P. Ratermann at the date of her death, and that said shares were evidenced by stock certificate No. 9 of the company, and that there were certain other documents affecting such shares of stock which were in the possession of Theresa P. Ratermann at the date of her death. It is the further contention of appellants that the 10.5972 shares of stock of the company involved in Cause No. 7684–E which the respondent Alois J. Ratermann filed against the same trustees under the indenture of trust of Henry Ratermann, Sr., seeking to have those shares transferred to him individually, are in fact shares of stock belonging to their mother, Theresa P. Ratermann, at the date of her death, which were evidenced by stock certificate No. 3 of the company, and that there were certain other documents affecting such shares of stock which were in the possession of the said Theresa P. Ratermann at the date of her death. In Cause No. 9977–E, the respondent Edward Ratermann named the company and its president as defendants, and sought transfer of the 49 shares of stock evidenced by certificate No. 9 to himself, individually, and the appellants contend that these shares in fact belonged to their mother, Theresa P. Ratermann, at the date of

her death. In Cause No. 9978–E, the respondents brought action against the company and its president seeking the transfer of the 49 shares of stock evidenced by certificate No. 7 to themselves as tenants in common, and the appellants contend that these shares in fact are shares of stock which belonged to their mother at the date of her death, under and by an agreement and contract to purchase signed by their mother and father on one hand, and Katherine Ratermann Huger on the other hand, which agreement and contract has been interfered with by the respondents, with the cooperation in such interference of Katherine Ratermann Huger and her husband, Bernard J. Huger. The 49 shares of stock of the respondent company, which the respondent Alois Ratermann in Cause No. 9980–E seeks to have transferred to him, individually, in his action against the company and its president, are also alleged to have in fact belonged to their mother at the date of her death. The intervening petition then goes on to allege that the company is not a duly existing company, having forfeited its charter; that the president is not the duly elected and qualified president of the company; that the company has been subject to a trusteeship resulting from nine separate trust instruments executed by the appellants' grandfather, Henry Ratermann, Sr., whereby certain trustees named therein were to govern the company but were prevented from doing so by the defendant president; that the interests of Mary Ratermann and those of appellants are adverse and that the appellants have a right to be heard on Mary Ratermann's motion to intervene; that irreparable injury to the company has been and is being done; that the acts of the president are illegal and fraudulent, and that the corporate assets are being wasted by the defendant president and by the respondents. The intervening petition further alleges that the 98 shares of stock evidenced by certificates No. 5 and No. 6 which are the subject of the original equity action are assets of the Al. G. Ratermann estate; and that since the filing of the original equity action, Al

G. Ratermann's brother, one Charles Ratermann, has died intestate, and that the ownership of his right, title and interest to certain shares of stock in the company is in doubt.

The relief sought by the appellants in their intervening petition is for an account of the assets and liabilities of The Ratermann Realty and Investment Company; that a money judgment be entered against George Ratermann, the president of the company, for the value of all property lost or wasted as a result of violation of his duties or abuse of his powers; that George Ratermann, the president of the company, be removed from office; that a determination be made of whether or not the corporation is duly existing; that the court of its own motion consolidate all the actions into one claim on the ground they represent common questions of law and fact; that the court on its own motion implead all necessary and proper parties; that a determination be made of the owners of all the shares of stock of the company; that the motion of Mary Ratermann to intervene be denied; and that the appellants be granted such other equitable relief as the court deems appropriate.

The appellants' motion to intervene was denied, there was no motion for rehearing or new trial filed, and within ten days after the order denying the motion to intervene was entered, the appellants filed their notice of appeal and have perfected their appeal to this court.

Section 507.090 RSMo 1949, V.A.M.S., reads:

"1. Upon timely application anyone shall be permitted to intervene in an action

"(1) When a statute confers an unconditional right to intervene; or

"(2) When the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; or

"(3) When the applicant is so situat-. ed as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof.

"2. Upon timely application anyone may be permitted to intervene in an action

"(1) When a statute confers a conditional right to intervene; or

"(2) When an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. * * *"

The appellants raise seven points in their brief. From the statement of the points presented, it is immediately apparent that appellants contend by points 1, 2, 3, 4, 6 and 7 that their right to intervene is under Paragraph 1, the mandatory provisions of § 507.090, supra. Under point 5 the appellants contend their right to intervene is under the permissive provisions, Paragraph 2, of that same section.

■ Insofar as the permissive provisions of § 507.090, supra, and the appellants' contention in point 5 is concerned, the complete answer is found in the case of City of St. Louis v. Silk et al. (Lang, Intervener) 239 Mo.App. 757, 199 S.W.2d 23. In that case, this court construed § 507.090, supra, holding, at 199 S.W.2d loc. cit. 27:

"In intervention there are two classes of cases, (1) those where the intervention is not indispensable to the preservation or enforcement of a right claimed by petitioner; and (2) those where the right to intervene is by the statute made absolute, or where the claim can be established, preserved, or enforced in no other way. *In the former, the permission to intervene is purely discretionary, and an or-*

*der refusing it is not a final judgment reviewable on appeal;* while in the latter, an order refusing intervention may be reviewed by appeal. 4 C.J.S., Appeal and Error, § 116, p. 214." (Emphasis supplied.)

Accordingly, appellants' contentions that the permissive provisions of § 507.090, supra, enable them to intervene must be ruled adversely to them for the discretion of the trial court in such matters is not subject to our review, City of St. Louis v. Silk, supra. For the purposes of this appeal, therefore, the appellants must prevail, if at all, under the mandatory provisions of the intervention statute cited above.

■ The appellants first contend that they have a mandatory right to intervene under § 507.090, subd. 1(1), supra, and claim the following provisions of the probate code comprise the statute conferring an unconditional right to intervene: § 473.083, § 473.663, § 472.160, § 472.200, § 472.250 and § 473.420 RSMo 1949 as amended, V.A.M.S. Section 473.083, supra, is the section governing the procedure for will contests, and confers the right on an heir at law to bring an action contesting the validity of a will. Section 473.663, supra, allows any person claiming an interest in property left by a deceased person where there has been no administration commenced to bring a petition in the probate court to determine heirship and the interest thereof. Section 472.160, supra, provides that any person aggrieved by an order, judgment or decree of the probate court may take an appeal from such order, judgment or decree. Section 472.200, supra, provides that such appeals are to be taken to the circuit court. Section 472.250, supra, provides that such appeals are heard de novo by the circuit court. Section 473.420, supra, sets forth the procedure for trial of claims, offsets, or counterclaims filed in estates. None of these statutes confer upon the appellants any right to intervene in this action. What these statutes do is illustrated by what the appellants have done. The appellants acting under the provisions

of these sections have brought separate actions to contest the allowance of the respondents' claims under § 473.420, supra, a separate action to contest the wills of appellants' father and mother under § 473.083, supra, and other separate actions authorized by these sections. These statutes in no way confer any right to intervene in this action brought by the respondents and thus interpose upon the issues of that action all the other matters for which separate actions are authorized by the statutes cited and which the appellants have in fact filed as they allege in their own petition. Appellants have no right to intervene under the provisions of § 507.090, subd. 1(1), supra.

■ The appellants then contend that the trial court erred in denying their motion to intervene because as provided by § 507.090, subd. 1(2), supra, the representation of the appellants' interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action. This court has previously held that that portion of § 507.090, supra, which compels intervention under subparagraph 1(2), thereof refers to the representation of the applicants' (here it is the appellants') interest regarding the issues in the original petition: in this case, the respondents' petition. It does not refer to the representation of the appellants' interest in any new issues which the appellants may seek to bring into the case, State ex rel. State Highway Commission v. Hudspeth, Mo., 297 S.W.2d 510, appeal transferred Mo.App., 303 S.W.2d 703. See also Pine Lawn Bank & Trust Co. v. City of Pine Lawn, 365 Mo. 666, 285 S.W.2d 679; State ex rel. Farmers Mutuals Automobile Insurance Company, Relator v. Weber, 364 Mo. 1159, 273 S.W.2d 318.

What are the issues stated in respondents' petition? It is the appellants' position that the issues are twofold. The first is that stated in the allegations of the petition outside of and excluding the allegations of paragraph 5 of the petition and subparagraph (d) of the prayer thereof, and that

this issue deals with the transfer of the stock represented by certificates No. 5 and No. 6, and totalling 98 shares, to the respondents in their capacity as representatives of the estate of the appellants' father. The appellants urge that the second issue of respondents' petition is that stated by paragraph 5 of the petition and subparagraph (d) of the prayer thereof, and deals with the ownership and transfer of other shares of the company to other persons, who are shareholders in fact but not of record of the company. It is the respondents' position that the averments of paragraph 5 as set out above are merely matters of inducement, and that the ultimate fact stated by the petition is that the defendant president of the defendant company has refused to transfer shares which collectively constitute a majority of the shares issued, and that a legal meeting of the shareholders cannot be held. The respondents urge that the allegations and alternative prayer do not ask for adjudication of ownership, but only allege that after plaintiffs prove as a fact that ownership has been determined, then that the court order a meeting incident to which the corporation gets its stockbook in order so as to reflect the corporation shareholders.

We are therefore compelled to a consideration of paragraph No. 5 of the respondents' petition and subparagraph (d) of the prayer of that petition, for if there is a second issue in respondents' petition in which the appellants have an interest, it must be stated by those paragraphs, which read:

"5. Plaintiffs state that there are other owners in fact but not of record of shares of the One Hundred Dollar ($100.00) par value common stock of the defendant, The Ratermann Realty & Investment Company, and that said persons have also made demands upon the defendants for the issuance of shares of stock to them and that defendants have refused to issue any such shares; that said other shareholders, together with these plaintiffs, own more

that a majority of the total of five hundred (500) shares of the capital stock of The Ratermann Realty & Investment Company.

\* \* \* \* \* \*

"(d) In the alternative that this Court, by an appropriate decree and by the appointment of an appropriate officer of this court, convene and hold a meeting of shareholders of The Ratermann Realty & Investment Company under the supervision of this court for the purpose of electing directors of said corporation. That incident to said shareholders' meeting and prior thereto that this court, by an appropriate order and decree, direct that the plaintiffs and the other persons who are shareholders in fact but not of record be issued certificates of stock evidencing their ownership of shares of the capital stock of The Ratermann Realty & Investment Company."

The respondents' contention that the allegation and alternative prayer do not ask for an adjudication of ownership cannot be maintained. The provisions of the alternative prayer contained in subparagraph (d) clearly provide for the court to direct that the plaintiffs "and the other persons" who are shareholders in fact but not of record be issued certificates of stock evidencing their ownership of shares in the company. It is obvious the court could not direct the issuance of stock evidencing ownership in the company to the respondents and "other persons" without first making a determination that they are in fact entitled to such a certificate, and thus the court would necessarily be determining ownership by these "other persons." While the purpose that compelled the inclusion of paragraph 5 and subparagraph (d) in respondents' petition does not appear, the effect of such inclusion is clear. That effect is to enlarge and expand the respondents' petition so that two separate issues are stated in that petition. The first issue deals with the transfer by the defendants, the company and its president, of the

shares in the company represented by certificates No. 5 and No. 6 to the respondents in their capacity as co-executors under the will of Al G. Ratermann. The second issue deals with the ownership and transfer of other shares of stock in the company to "other persons" including these respondents when they are not acting in their representative capacity and who are "shareholders in fact but not of record."

■ The appellants, in their points stated, divided subsection 1(2), of § 507.-090, supra, into two separate points, the first based upon alleged inadequacy of representation and the second upon the allegation that they are or may be bound by a judgment in the respondents' case and contend that they would have a right to intervene under either. However, elementary rules of statutory construction prevent such a division. The use of the word "and" is plain, and the statute as thus read is unambiguous. Accordingly, the fact that a judgment is or may be binding upon one seeking intervention does not afford a basis for mandatory intervention under § 507.-090, subd. 1(2), supra, unless the representation afforded that party is at the same time "inadequate"· as that term is used within the meaning of subsection 1(2) of the statute, State ex rel. Duggan v. Kirkwood, 357 Mo. 325, 208 S.W.2d 257, loc. cit. page 262, 2 A.L.R.2d 216; Farmland Irrigation Co. v. Dopplmaier, 9 Cir., 220 F.2d 247; Glens Falls Insurance Co. v. Cook Brothers, Inc., D.C., 23 F.R.D. 269.

■ Taking the conjunctive requirements of subsection 1(2), in order and keeping in mind that both must be present for the appellants to come under that provision of the statute, we will determine whether or not the representation of the appellants' interest is or may be inadequate as to the first issue presented in respondents' petition, that dealing with the transfer by the defendants of the shares of stock represented by certificates of stock No. 5 and No. 6 to the respondents in their capacity as co-executors of the estate of Al G.

Ratermann. It is immediately apparent that the appellants do not assert any interest in the shares of stock represented by certificates No. 5 and No. 6 except as heirs of their father, Al G. Ratermann. The intervening petition they seek leave to file so states. The respondents are the executors of their father's estate, and by § 473.-270 RSMo 1949, V.A.M.S., they " * * * shall collect all money and debts of every kind due to the decedent * * * and shall commence and prosecute all actions * * * and defend all actions brought against him." Moreover, it is obvious that the respondents do not occupy a position adverse to the appellants. If the respondents win the principal action, it is the appellants who will also gain. The appellants in their petition to intervene base their claim of inadequacy of representation solely upon conflict in interest and/or adverse claims. As above stated, the respondents do not occupy an adverse position to the appellants, and in fact if respondents are successful, so far as the allegations of their petition concerning certificates No. 5 and No. 6 are concerned, the appellants will profit therefrom, for the estates of Al G. Ratermann ad Theresa P. Ratermann will be thus enriched, and the appellants as heirs of those estates will receive their proportionate share thereof. We rule that the appellants have failed to show that they are or may be inadequately represented as to the allegations of respondents' petition as to the issue regarding transfer of stock as represented by certificates No. 5 and No. 6. That being so, we need not consider whether or not the appellants are or may be bound by a judgment in the principal case, so far as the first issue in respondents' petition is concerned, State ex rel. Duggan v. Kirkwood, supra.

■ What then of the representation of appellants' interests by respondents as to the second issue of respondents' petition: is that representation inadequate, or may it become so, and are or may be the appellants bound by a judgment in the action? The record discloses that the respondents acting in their representative capacity as co-executors under the will of Al G. Ratermann have filed a separate action, No. 7683–E, to have transferred to them in such capacity by certain trustees 44.5718 shares of stock in the company. The only allegation of the appellants' petition going to that matter is that these shares in fact belonged to Al G. Ratermann at his death. These shares fall into the same general category as those with which we were concerned when considering the alleged inadequacy of the respondents' representation of the appellants as to the first issue of the petition. The same is true of the shares which are the subject of Cause No. 7682–E, filed by the respondents acting in their representative capacity as co-executors of the estate of Theresa P. Ratermann to have transferred to them in such capacity by certain trustees 23.3770 shares of stock in the company. The actions of the respondents in these two instances is not conflicting or adverse to that of the appellants, for as the respondents succeed so will the appellants benefit. Since these are the only bases for inadequacy of representation assigned by the appellants, their representation is not inadequate as to these shares which might be ordered transferred by the court acting under paragraph 5 and subparagraph (d) of the respondents' petition, and we will therefore not consider whether or not the second conjunctive element of § 507.090, subd. 1(2) is or is not present. Farmland Irrigation Co. v. Dopplmaier, supra.

What other stock could be ordered transferred by the court when determining this second issue as it is raised by paragraph 5 and subparagraph (d) of the respondents' petition? The record discloses certain other shares as to which the respondents do not seek transfer in their representative capacity but seek transfer as individuals or as tenants in common. In Cause No. 7680–E involving 22.2857 shares of stock in the company, the respondents bring action as individuals to compel the trustees

of a trust established by Henry Ratermann, Sr., to transfer these shares to them as tenants in common. As an individual, the respondent Edward Ratermann also seeks by Cause No. 7681–E involving 10.5972 shares of stock in the company to compel the trustees of this same trust to transfer these shares to him individually. In Cause No. 7684–E, the respondent Alois Ratermann as an individual seeks to compel those same trustees to transfer to him individually 10.5972 shares of stock in the company. In Cause No. 9978–E, both of the respondents, again acting as individuals, seek to compel the company and its president, the same defendants we have in the instant case, to transfer 49 shares of stock in the company to them as tenants in common. In Cause No. 9977–E, the respondent Edward Ratermann seeks to compel those same defendants to transfer the 49 shares to him as an individual, and in Cause No. 9980–E the respondent Alois Ratermann seeks the same result against the same defendants. There is a total of 190.4801 shares involved in these actions which disclose that as to such total of shares the respondents do not seek transfer in their representative capacity, but instead seek it as individuals or as tenants in common. Each respondent seeks the transfer of 59.5972 shares to him individually, and as tenants in common they seek the transfer of 71.2857 shares. As to such shares, the appellants' contention is that their father and/or their mother were seized of such shares at the date of death, and that these shares are in fact the property of their parents' estates, and thus in their proportionate part their property. The respondents' contention is that these shares in various denominations belong to them individually or as tenants in common. It follows that the appellants' contentions of conflicting or adverse interests as to such shares must be sustained, for the interests of the respondents and of the appellants are diametrically opposed. Under such circumstances, the representation of the appellants by the respondents in the instant case, where the transfer of these 190.4801 shares could be ordered by the court under the second issue of the respondents' petition, that issue raised by paragraph 5 and subparagraph (d), is or may be inadequate, as that term is used in § 507.090, subd. 1(2), supra.

It is therefore necessary to determine whether or not the second conjunctively stated element of § 507.090, subd. 1(2), supra, is present. The question is whether or not the trial court, if it proceeded under paragraph 5 and subsection (d) of respondents' petition to consider the ownership of the 190.4801 shares of the stock of the company above referred to and concluded that the transfer of such shares to the respondents individually and as tenants in common should be ordered, would bind the appellants by such action. Recalling again that the appellants claim only as the heirs, the last part of the above hypothesized question should be stated as to whether or not such action of the trial court would bind the estates of Theresa P. Ratermann and Al G. Ratermann, for if so, it would clearly bind these appellants who claim only as heirs. A party has been said to be bound by the judgment, as that term is used in Federal Rule of Civil Procedure, rule 24, 28 U.S.C.A., which is the same as our § 507.090, subd. 1(3), supra, only when that party may be subject to a plea of res judicata, Ar-tik Systems, Inc. v. Dairy Queen, Inc., D.C., 22 F.R.D. 122. While the term "res judicata" is in common use when applied to such a matter as we have here, this principle when applied to matters actually litigated and determined in a prior proceeding between the same parties in a prior case is more accurately referred to as "estoppel by judgment" or "collateral estoppel", Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S. Ct. 715, 92 L.Ed. 898. Generally speaking, identity of the thing sued for, identity of the cause of action, identity of the persons and parties to that action and identity as to the quality of the person for or against whom such a claim is made are essential to a plea of estoppel by judgment. State ex inf. Kell v. Buchanan, 357 Mo. 750, 210 S.

W.2d 359; State ex rel. Dalton ex rel. Stonum v. Reorganized District No. 11, Clinton County, Mo., 307 S.W.2d 501. Res judicata may be of two kinds: as to judgment or as to some particular facts litigated between the parties. In re McMenamy's Guardianship, 307 Mo. 98, 270 S.W. 662; Norwood v. Norwood, 353 Mo. 548, 183 S.W.2d 118. Applying those principles to this case, it is apparent that the estates of appellants' father and mother would not be bound by any action the trial court might take while proceeding to determine the second issue in the case under paragraph 5 and subparagraph (d) in regard to the 190.4801 shares of stock in the company which the respondents acting outside of their representative capacity seek to compel the transfer of to themselves individually and as tenants in common. This is for the reason that there is no identity of the persons and parties. In all these claims the respondents act as individuals outside of their representative capacity as co-executors. In none does the estate of Al G. Ratermann or the estate of Theresa P. Ratermann appear by the respondents acting as co-executors of either one or both of those estates or by anyone else acting or claiming to act in such a capacity. Since legal title to these shares passed primarily to the respondents as co-executors of the estates under which appellants claim, they are indispensable parties to an action which would bind the estate, Odom v. Langston, 351 Mo. 609, 173 S.W.2d 826. The respondents' responsibility under § 473.270, supra, requires any action that would bind the estate be defended by them. It follows that although the second issue of the respondents' petition, that stated by paragraph 5 and subparagraph (d), does raise, as to these 190.4801 shares, an issue as to which the appellants' representation by respondents can be said to be inadequate as that term is used in § 507.090, subd. 1(2), supra, it does not raise an issue as to which a judgment of the trial court as to such shares is or may be binding upon the estates of Al G. Ratermann and/or Theresa P. Ratermann, and thus not binding upon

the appellants who claim as heirs of the above named decedents. One of the conjunctively stated requirements of the statute is missing and therefore the appellants have no mandatory right to intervene under the provisions of § 507.090, subd. 1(2), supra.

The appellants then contend that the trial court erred because the appellants have a mandatory right to intervene under the provisions of § 507.090, subd. 1(3), supra, which provides for intervention upon timely application

"(3) When the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof."

Again it is the nature of the appellants' claim as heirs that prevents them from coming under this provision of the statute. The efforts of the respondents when acting as co-executors cannot result in the appellants being adversely affected by a distribution or other disposition of those shares where the claim made by the respondents under either the first or the second issue raised by their petition is made when acting in their executory capacity for if the respondents prevail the appellants are affected beneficially by the addition of these shares to the estates of those under whom they claim as heirs. If respondents lose, the appellants have lost nothing for, in any event, the respondents, under § 473.270, supra, were the proper persons to prosecute such actions.

In those instances where the respondents, acting outside of their executory capacity, either individually or as tenants in common, seek the transfer of shares to them which the appellants contend are assets of the estates under which they claim, it was held in the case of State ex rel. Simons v. Wilcox, Mo.App., 224 S.W.2d 392, the court quoting with approval from Carr, Missouri Civil Procedure, Vol. 1, § 70, page 226, that the effect of § 507.090, subd. 1(3), supra, was to continue the prior nonstatu-

tory law, as for example in receiverships, but with particular emphasis upon the absolute right to intervene. The court there held that what this subsection contemplates is a fund as is created by a receivership, partition, mortgage, or arising out of a trust, citing Monticello Building Corporation v. Monticello Investment Co., 330 Mo. 1128, 52 S.W.2d 545. Under the facts in this case there is obviously no fund created by partition or mortgage here involved that might be said to constitute property in the hands of the court or of an officer thereof. So far as a trust is concerned, it is true that a cestui que trust who is not a party to an action between a trustee and a third person may intervene by showing the court that it is necessary to make him a party in order to preserve his interests, Monticello Building Corp. v. Monticello Investment Co., supra, 52 S.W.2d loc. cit. 550, but that is not this case. In the first place, this is not an action between a trustee and a third person, except in the sense that the defendant president of the company also happens to be one of the trustees, but the theory of this action is not related to any trust nor is the defendant president named because of any alleged fiduciary capacity. That is the theory of a separate action by the respondents acting in a totally different capacity from which they act here and the appellants cannot enlarge the respondents' petition in this case by grafting the separate action against the trustees filed by the respondents to this action against different defendants. In the second place, the rule recited as to cestui que trusts requires a showing to the court that intervention is necessary to preserve the cestui que trust's interest. It is undiscoverable from this record even whether the appellants are cestui que trusts of the Henry Ratermann, Sr. trust agreements. Appellants never claim anything as cestui que trusts in their petition, nor even allege that they are such. The only allegation as to such agreements is that they provide for certain trustees to govern the defendant company. So far as we are concerned in this case with the presence or absence of a fund created

by a receivership as constituting property in the custody of the court or of an officer thereof, the allegations of paragraph 5 and the prayer of subparagraph (d) do broaden the issues of the respondents' petition, but they certainly do not amount to a plea for a receivership. However, there is such a plea contained in the prayer of the intervening petition of Mary Ratermann, the motion to allow the filing of which has been sustained, the ruling as to which is not before us. We will not pass upon whether or not the issues of the respondents' original petition have been enlarged by Mary Ratermann's intervening petition to include the appointment of a receiver or not for regardless of that determination, it will not aid the contentions of these appellants who fail to understand the nature and extent of their rights and privileges as heirs. Legal title to the personalty, the stock, passed primarily to respondents as co-executors of the estates under which appellants claim as heirs. It is true that as heirs the appellants have certain recognized rights in this stock, but these so called "equitable" rights are subordinate to the title of the respondents as co-executors, Odom v. Langston, supra. The respondents take and hold this legal title to the stock and other personalty until distribution is ordered, whereupon the residue descends to the heirs, Byers v. Weeks, 105 Mo.App. 72, 79 S.W. 485. Section 507.090, supra, was patterned after Federal Rule of Civil Procedure, rule 24, see U.S.C.A. Title 28, and it has been held that the subsection thereof corresponding to § 507.090, subd. 1(3), supra, contemplates that the person having the right of intervention should have a legal interest in the property in the custody of the court or of its officer, Missouri-Kansas Pipe Line Co. v. Columbia Gas and Electric Corporation, D.C., 27 F.Supp. 116, appeal dismissed Missouri-Kansas Pipe Line Co. v. U. S., 3 Cir., 108 F.2d 614, certiorari denied 309 U.S. 687, 60 S.Ct. 887, 84 L.Ed. 1030. While the "equitable" interest the appellants have in the instant case is greater than that present in the Columbia Gas case, it still lacks the quality of the legal interest required of one

seeking to intervene under § 507.090, subd. 1(3). Even if we assume a receivership, it is the respondents as co-executors who are charged by statute with the prosecution and defense of the rights with respect to the issues arising out of the receivership of the estates of those under whom the appellants claim, § 473.270, supra. As heirs, the appellants are not necessary parties thereto, and indeed the joinder of the appellants in such an action would result in a multifarious action and a misjoinder of parties. Niederberg v. Golluber, Mo., 162 S.W. 592.

The appellants have failed to bring themselves within the provisions of § 507.090, subd. 1(1), (2), (3), supra.

■ This record also discloses that these appellants have sought by separate actions in the probate court to remove the respondents as co-executors in each of the estates herein concerned. While the record does not disclose when such actions were filed, it is a fair inference that this was prior to the date of the filing of their motion to intervene and accompanying petition. Having elected that remedy which, with its accompanying actions, each recognized by statute, will reach the same result sought by intervention herein, the appellants should be left to proceed in that manner. As was said in State ex rel. Farmers Mutuals Automobile Insurance Co., Relator, v. Weber, 364 Mo. 1159, 273 S.W.2d 318, supra, loc. cit. 323:

> "There is nothing in our statutes which authorizes that intervention may be so used by strangers to a pending action that it may there become a vehicle by means of which strangers may urge claims or contentions which have a proper and available forum elsewhere."

The judgment should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of this court. The judgment is therefore affirmed.

WOLFE, P. J., and ANDERSON, J., concur.

O. P. OWEN, Special Judge, not participating.